UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| LOLA GADDIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 6:15-CV-132-HAI |
| GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, et al., | ) | MEMORANDUM OPINION & ORDER |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court considers Defendants' Motion for Summary Judgment. D.E. 73. Because, after a full consideration of the record and governing law, the Court finds that genuine issues of material fact exist, the motion is denied.

**FACTUAL BACKGROUND**

On July 18, 2012, Plaintiff's vehicle was struck from the rear by a vehicle operated by Lois Morris. D.E. 73-1 at 2; D.E. 79 at 1. Morris was insured by State Farm at the time, while Plaintiff was insured by Defendant, Garrison Property and Casualty Insurance Company ("Garrison"). D.E. 79 at 1. PIP benefits were paid by Garrison in August 2012. D.E. 73-6 at 2. Originally represented by Kenneth Boggs, who passed away, Randal Jewell, took over as counsel for Plaintiff. *Id.* D.E. 73-11 at 2; D.E. 79 at 1.

On May 30, 2014, Jewell submitted a formal settlement demand package to State Farm claiming $33,303.81 in medical bills had been incurred and contending that past and future lost earnings through age 68 totaled $166,965.14. D.E. 73-13 at 2-3. The demand letter stated "You have certified your limits of $100,000 available to [Plaintiff.] Please certify whether or not you

have additional coverage such as an umbrella policy or an excess liability policy." *Id*. at 3. The letter demanded a tender of State Farm's policy limits. *Id*. The letter was also addressed to Gregory Luna, United Services Automobile Association, and stated "we hereby put you on notice to prepare for said tender." *Id*. Per the letter, the demand was open for thirty days. *Id*.

State Farm tendered its $100,000 policy limit on July 9, 2014. D.E. 73-14; D.E. 81 at 2, 9. Plaintiff then notified Garrison of this tender on July 11, 2014, and demanded underinsured motorist benefits ("UIM"). D.E. 73-16; D.E. 81 at 11. Specifically, the letter stated "Lola Gaddis hereby demands the limits of any available UIM benefits." *Id*. Jewell also sent Garrison the original demand package sent to State Farm. D.E. 73-15. The parties agree that Garrison properly chose to substitute payment for State Farm. D.E. 73-1 at 3; D.E. 79 at 2.

On August 6, 2014, Garrison offered $20,000 to settle the UIM claim. D.E. 73-17. Plaintiff then provided Garrison with a report from Dr. Ralph Crystal, who opined that Plaintiff was unable to perform her past work as a store manager or related work due to physical impairment. D.E. 81 at 22-33. Crystal's report claimed lost earnings to age 66 of $188,950. *Id*. at 33. On August 18, 2014, Plaintiff submitted a revised demand of $250,000. D.E. 73-18. Garrison stuck by its previous offer of $20,000 to settle the UIM claim. D.E. 73-26 at 4; D.E. 81 at 60.

Plaintiff then filed suit in Kentucky state court, asserting claims for UIM benefits, for bad faith under common law and Kentucky's Unfair Claims Settlement Practices and Consumer Protection Acts, and for punitive damages. D.E. 1-3. On April 29, 2015, the UIM portion of the case was settled at mediation for $155,000, but Plaintiff's other claims remained and were removed to this Court on July 23, 2015. D.E. 1. Those claims were later amended to clarify that they related to both pre-litigation and post-litigation conduct. D.E. 13-1 at 1.

2

## SUMMARY JUDGMENT STANDARD

A motion under Rule 56 challenges the viability of the other party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that he is entitled to a judgment as a matter of law, he is entitled to summary judgment. *Kand Med., Inc. v. Freund Med. Prods., Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need his own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). "A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts." *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

The Court reviews all of the evidence presented by the parties in a light most favorable to the responding party and draws all reasonable factual inferences in her favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened

burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

## ANALYSIS

The parties agree that Kentucky substantive law governs Plaintiff's bad faith claims and that the following elements must be established:

(1) the insurer must be obligated to pay the claim under the terms of the policy;

(2) the insurer must lack a reasonable basis in law or fact for denying the claim; and

(3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed[.]

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). The Sixth Circuit has said that "Kentucky's evidentiary standard is high: a plaintiff must show that the 'insurer has engaged in outrageous conduct' and that this conduct was 'driven by evil motives or by an indifference to its insureds' rights.'" *Cox v. Empire Fire & Marine Ins. Co.*, 637 F. App'x 904, 907 (6th Cir. 2016) (quoting *United Servs. Auto Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003) and (*Nat'l Sur. Corp. v. Hartford Cas. Ins. Co.*, 502 Fed. Appx. 425, 428 (6th Cir. 2012)). Thus, to defeat summary judgment, Plaintiff must point to evidence from which a reasonable jury could conclude that Garrison's conduct was outrageous.

There is such evidence in this case. Plaintiff primarily contends that Garrison misrepresented the policy limits at issue, in violation of KRS § 304.12-230(1), which states: "It is an unfair claims settlement practice for any person to commit or perform any of the following acts or omissions: (1) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue[.]" The negotiation with Garrison began on July 11, 2014, when Plaintiff's

4

counsel communicated that she "hereby demands the limits of any available UIM benefits." D.E. 73-16; D.E. 81 at 11. During discovery, the Court overruled a privilege/work-product objection by Garrison and ordered it to produce a document entitled "Lit Manager Initial Review." Although the preparer of that document is not self-evident, the document memorializes that "Plaintiff's counsel under impression policy limits are $300,000 . . . [a]djuster has not sent anything in writing or documenting the file advising the plaintiff that the limits are in fact stacked three times for $900,000." D.E. 81 at 14. Plaintiff contends that clarification was never made, and Garrison does not contend otherwise.

Viewed in the light most favorable to Plaintiff, the Court finds that this conduct was sufficiently deceptive to give rise to a genuine issue of material fact. Clearly Garrison knew at some point that Jewell labored under a misunderstanding of the policy limits, but did not correct the error. A reasonable jury could conclude that Garrison took advantage of Plaintiff's counsel's misunderstanding in an attempt to effectively cap the negotiations at one-third of the possible coverage limits. Defendants contend the Lit Manager Initial Review document is not admissible as it is protected work-product. Even if that doctrine applied, it would not preclude the information therein from being admitted at trial. Plaintiff can attempt in various ways to present evidence that Garrrison was aware Jewell misunderstood the limits and did not correct him, primarily by simply asking a Garrison employee with knowledge how they interpreted Plaintiff's initial demand for the full policy limits. If the witness testifies consistently with the information in the Lit Manager Initial Review, the testimony will dispense with the need to rely upon the document. If the witness answers inconsistently with the information in the Lit Manager Initial Review, then it may become admissible for impeachment. In other words, just like any information obtained from a document produced in discovery, Plaintiff does not have to rely

upon the document itself to present evidence of Garrison's deception concerning the policy limits.

Indeed, much of that process has already occurred. Garrison contends that its claims handler, Jodi Weaver, testified in deposition that she "assumed" Jewell "knew" there was stacking, and that Plaintiff has not offered admissible evidence that Jewell was mistaken about the limits. D.E. 73-27 at 3. But the initial demand for the policy limits will no doubt be admitted at trial, and Weaver's testimony only creates more issues for the jury to sort out as to how Garrison responded. Indeed, she acknowledges she did not "correct" Jewell by informing him the limits were $900,000. *Id*. Defendants do not contend that her testimony is inadmissible.

Garrison also contends that Jewell must have known what the actual policy limits were because, in February 2014, he sent the declarations page for the Garrison coverage to State Farm. D.E. 73-12 at 2-3. The inference Garrison asks the Court to draw here is not supported by any admissible evidence describing Jewell's understanding, and his cover letter does not describe his understanding of the limits. Moreover, his letter could exacerbate the potential deception in a reasonable juror's mind by establishing that Jewell's misunderstanding as to the limits arose after he sent that letter, but Garrison still took advantage of it.

Finally, Defendants contend that Plaintiff's own evaluation never exceeded $410,000, which the Court construes as the sum of the would-be $300,000 limits, the $100,000 provided by State Farm, and the $10,000 in PIP benefits, and the claim settled for $155,000 (or $265,000 in the aggregate), so the fact that the UIM limits were stacked never was, or could have been, an issue. Relying upon *Caudill v. New Hampshire Ins. Co*., 2016 WL 3356439 (Ky. Ct. App. June 10, 2016), Defendants contend that Plaintiff's claim of a misrepresentation is "misplaced" because the stacked coverage was never at issue. But, it was at issue when Plaintiff initially

6

demanded the policy limits without specifying a dollar amount. Faced with such a demand and at some point learning that Jewell misunderstood the limits, a reasonable jury could conclude that Garrison acted in bad faith by intentionally letting the misunderstanding go uncorrected. This is sufficiently akin to a "prolonged refusal to disclose its policy limits" so as to give rise to a permissible inference of bad faith. *Phelps v. State Farm. Mut. Auto. Ins. Co.*, 736 F.3d 697, 706 (6th Cir. 2012).

Defendants separately contend that Garrison never denied or delayed payment of Plaintiff's claim, and reasonably valued it based upon the circumstances. Arguing its $20,000 was actually an aggregate offer of $130,000 when the substituted payment for State Farm and the $10,000 in PIP benefits are included, and that that valuation had a reasonable basis in fact, Garrison contends the main valuation dispute was over the value of Plaintiff's lost future earnings, but it rejected Plaintiff's calculation because her medical records indicated she could return to work and contained varying pain assessments. Garrison also defends its movement from the initial $20,000 offer to the final $155,000 settlement amount by arguing that, in the interim, its claim handler obtained and reviewed Plaintiff's Social Security Administration disability award which found her to be totally disabled, which led Garrison to re-evaluate the claim in good faith. Of course settlement positions may change, and their re-evaluation in light of newly obtained information can be reasonable. Plaintiff contends that Garrison "lowballed" the claim, ignored Dr. Crystal's report, and engaged in delay tactics, and relies upon the opinions of her expert, Bill Woolums, in support of those positions. The Court has previously denied Defendants' motion to exclude Woolums's report. D.E. 84.

The parties therefore dispute the reasonableness of Garrison's evaluation and handling of the claim. If this case only presented the current record concerning claim evaluation and

7

processing by Garrison, without evidence that Garrison knew of Jewell's misunderstanding concerning the policy limits and failed to correct it, Defendants might have a point that judgment in their favor should issue. But the evidence that Garrison knew of Jewell's misunderstanding and did not correct it cannot simply be excised from the totality of the facts presented. So the story of how Plaintiff's claim was handled will be told to a jury.

Therefore, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (D.E. 73) is **DENIED**.

This the 8th day of September, 2016.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge